UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| XAVIER L. McCOY, | Civil Action No.: 4:11-cv-0773-JFA-TER |
| Plaintiff, | |
| -vs- | |
| | **REPORT AND RECOMMENDATION** |
| MR. OFFICER ANDERSON, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff, who is proceeding pro se, is an inmate in the custody of the South Carolina Department of Corrections (SCDC), and is housed at the Lieber Correctional Institution (LCI). Although Plaintiff labels his case as one for violations of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, et seq., the body of his Complaint reveals that he is actually alleging that Defendant used excessive force in violation of the Eighth Amendment. Thus, his claim falls under 42 U.S.C. § 1983. Presently before the Court are Plaintiff's Motions for Preliminary Injunction (Documents # 158, 175, 182) and Defendant's Motion for Summary Judgment (Document # 189), Plaintiff's Motion for Summary Judgment (Document # 133). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because these motions are potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II. MOTIONS FOR PRELIMINARY INJUNCTIONS

In Plaintiff's Motions for Preliminary Injunction, Plaintiff seeks injunctive relief against Mr. Warden Wayne C. McCabe and Mr. Assistant Warden McFadden at Lieber Correctional Institution to allow Plaintiff access to the law library. Neither McCabe nor McFadden are Defendants in this

action. Furthermore, the relief sought by Plaintiff in these Motions is unrelated to the relief he seeks in his Complaint, which arises out of an alleged use of excessive force by Defendant. Generally, the goal of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir.2003). In contrast, mandatory preliminary injunctions compel action and, typically, do not preserve the status quo. Plaintiff is seeking a mandatory preliminary injunction by asking the court to compel non-parties to allow him access to the law library. Mandatory preliminary injunctions should be sparingly exercised and granted "only in those circumstances when the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir.1980). "[A] mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind." In re Microsoft Corp. Antitrust Litig., 333 F.3d at 526.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 55 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008) All four requirements must be met. Id. Winter requires a party seeking a preliminary injunction to "clear[ly] show[ ]" that he or she is likely to succeed on the merits. Dewhurst v. Century Aluminum Co., 649 F.3d 287, 290 (4th Cir.2011). Plaintiff has failed to make the requisite showing. Thus, Plaintiff's Motions for Preliminary Injunction should be denied.

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A. Facts

In his Complaint, Plaintiff alleges that he and Defendant "exchange some words" on

December 18, 2008. Defendant then asked Plaintiff if he wanted to die and shot gas in his face through the food flap to his cell. Plaintiff alleges that Defendant continued to spray the gas at the back of Plaintiff's head even after Plaintiff turned away to wash his eyes with water. Approximately ten minutes later, Plaintiff was taken into the recreation field and seen by a nurse. He was again seen by a nurse on December 20, 2008, about his face and eye injuries. Complaint pp. 3-4. In a Declaration attached to the Complaint, Plaintiff asserts that he has lost his eye sight. Plaintiff Declaration p. 1.

Defendant avers that on December 18, 2008, he was assisting with feeding inmates in the Special Management Unit (SMU) and the cell flaps on the cells were open.[1] After they delivered all food trays, they were closing and securing the cell flaps. He stated inmates will also talk to other inmates through the slots in the cell doors when the flaps are open. He stated when he approached the Plaintiff's cell, the Plaintiff was talking to another inmate. He instructed the Plaintiff that he needed to close his flap at that time. The Plaintiff responded profanely and stated that he was not finished talking to the other inmate and refused to close the cell flap. Defendant instructed the Plaintiff again that he needed to close the flap and instructed the Plaintiff to move away from the cell door. The Plaintiff's face was in the opening on the cell door and Defendant could not close the flap as he did not want it to hit the Plaintiff's face. Defendant Affidavit ¶ 5.

The Defendant again instructed the Plaintiff to move away from the cell door so he could

---

[1] The cells in SMU have a solid steel door with a slot in the door which is used for a number of purposes, including providing food trays to SMU inmates. The slot in the door is covered by a flap which can be secured from the outside. Normally, the flaps remain closed for security reasons. When flaps have been left open, inmates have attempted to reach out and grab an officer or another inmate and have attempted to assault them. It also provides a means for inmates to exchange items or pass contraband, and inmates have also spit on officers through the flap or thrown items such as feces or urine on officers. Therefore, the flaps generally remain closed except during mealtime. During meals, the cell flaps are opened so that officers can deliver trays to the inmates. The flaps are closed and secured after inmate food trays have been delivered. Defendant Affidavit ¶ 4.

close the flap, but the Plaintiff put his arm out of the flap to prevent him from closing it. Defendant ordered the Plaintiff to remove his arm, but he failed to do so. At that point, Defendant attempted to guide the Plaintiff's arm back into the flap and was closing the flap when the Plaintiff pushed the flap back against him. He then administered a short burst of chemical munitions in order to gain compliance. As the Plaintiff showed aggression, Defendant did not want the situation to escalate and used chemical munitions as opposed to forcibly attempting to move the Plaintiff's arm. After Defendant administered the chemical munitions, he immediately closed and secured the flap. Defendant Affidavit ¶ 6.

After a brief amount of time, Defendant returned and removed the Plaintiff from his cell. The Plaintiff cooperated and was removed without any further incident. Defendant also offered the Plaintiff a shower, but he refused to take a shower. However, Plaintiff was seen by medical personnel. Defendant Affidavit ¶ 7. Plaintiff's medical records reveal that the Plaintiff was seen by the nurse on December 18, 2008. The Plaintiff complained of burning to the left side of his face and left eye, but the nurse noted there was no redness to his face or eyes and that his breathing was even and unlabored. Plaintiff Medical Records p. 52

Plaintiff was again seen on December 20 in sick call complaining of "slight burning from being gassed," but primarily wanted medical personnel to document the incident in the computer. The nurse informed the Plaintiff that she was not present when the incident occurred and could not provide any documentation other than the Plaintiff's complaints and medical condition. Plaintiff Medical Records p. 52 (attached as an Exhibit to Prigden Affidavit).

Plaintiff made one additional complaint concerning his left eye on January 5, 2009, but did not reference the use of chemical munitions. A vision screening was conducted on January 8, 2009 at which time the Plaintiff's vision was 20/25 in his right eye and 20/40 in his left eye. Plaintiff

Medical Records p. 51.

In his Response to Defendant's Motion for Summary Judgment, Plaintiff asserts that he never touched Defendant. Response p. 3. He asserts that he and Defendant were "horseplaying" and calling each other names and "gas got involve when the Defendant got mad, angry, and wildly foolish because I 'Plaintiff' got the best of the Defendant." Response p. 3. Further, Plaintiff states that Defendant failed to abide by SCDC policy because he did not obtain approval from his supervisor or use a video camera for his "planned use of force." Response p. 2. Defendant asserts that the use of force was not planned but was in response to Plaintiff's actions and, thus, no prior approval was necessary. Plaintiff states that Defendant is making a false statement to the court by asserting that Plaintiff pushed the door flap on Defendant's arm. Response p. 6. Plaintiff also describes the use of force by Defendant as "minimal" but "unnecessary." Response p. 6.

**B.     Standard of Review**

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.

Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**C.    Discussion**

    **1.    Excessive Force**

This action is before the court pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). Here, Plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated by Defendant while acting under the color of

state law.[2]

It is well established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. Wilkins v. Gaddy,-- U.S. --, --, 130 S.Ct. 1175, 1179, 175 L.Ed.2d 995 (2010). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Whitley v. Albers, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Whether there is an Eighth Amendment violation in the context of a prison disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 130 S.Ct. at 1178.

With respect to the first Whitley facor, as stated above, Plaintiff disputes that he closed the flap on Defendant's arm. However, he does not dispute that he "exchange some words" with Defendant, refused to close the flap, or stuck his arm out of the flap to prevent Defendant from closing it himself. It is also undisputed that Defendant first attempted to guide Plaintiff's arm back into the cell but was unsuccessful and, thereafter, used the chemical munitions to obtain Plaintiff's

---

[2]Plaintiff brings this action against Defendant, an employee of the SCDC, in his official and individual capacities. "Neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, summary judgment is appropriate on Plaintiff's claim against Defendant in his official capacity.

compliance with his orders. Thus, Defendant has presented evidence to show that a need for the application of force existed and Plaintiff has failed come forward with facts sufficient to show that a dispute of fact exists.

The second Whitley factor also weighs in favor of summary judgment because Plaintiff concedes that the amount of force used was "minimal." Additionally, Defendant used the chemical munitions as a result of Plaintiff's failure to respond to his verbal directives. Therefore, the evidence in the record reveals that the relationship between the need and the amount of force used was appropriate.

Plaintiff fails to present sufficient evidence as to the third Whitley factor because, although Plaintiff claims that he is still seeking medical treatment for his vision, he has failed to present evidence to support this assertion. The medical records presented by Defendant reveal that Plaintiff complained of burning to the left side of his face and his left eye immediately following the incident and that, when checked a few weeks after the incident, Plaintiff's vision was 20/40 in his left eye. The medical records, which are current through December 21, 2011, indicate Plaintiff made no other complaints regarding his vision. Furthermore, Plaintiff has failed to produce evidence sufficient to show that any loss of vision was a result of the force used by Defendant.

Finally, as to the fourth Whitley factor, Defendant avers that he used the minimal amount of force necessary to control the situation and the minimal force used was a result of Plaintiff's actions. Defendant Affidavit ¶ 8. Defendant avers that the flaps on the cells in SMU normally remain closed because, when left open, inmates have attempted to reach out and grab an officer or another inmate and have attempted to assault them. Thus, Defendant perceived a threat to inmate or officer safety when Plaintiff refused to close the flap as directed. Given the "ever-present potential for violent confrontation and conflagration" in prison settings, measures taken by prison officials to prevent

internal disturbances are "accorded wide-ranging deference." Whitley v. Albers, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). When reviewing the actions of correctional officers, the court must refrain from "critiqu[ing] in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of second chance." Id. at 320.

In sum, even when viewing the facts in the light most favorable to Plaintiff, he has failed to show that Defendant's use of force was malicious and sadistic rather than a good-faith effort to maintain or restore discipline. Therefore, summary judgment is appropriate.

### 2. **Qualified Immunity**

Defendant also argues that he is entitled to qualified immunity on Plaintiff's excessive force claim. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. The Harlow Court held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, "a court must first determine whether the Plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.2000). Further, "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials

cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir.1998).

In Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

As discussed above, Plaintiff fails to show that Defendant violated any of his clearly established constitutional or statutory rights. Nevertheless, assuming arguendo Plaintiff's constitutional rights were violated, the record before the Court shows that as to Plaintiff and the specific events at issue, Defendant performed the discretionary functions of his official duties in an objectively reasonable fashion. He did not transgress any "bright lines" of statutory or constitutional rights of Plaintiff. Thus, the undersigned recommends that Defendant is entitled to qualified immunity.

### 3. State Law Claims

Plaintiff fails to submit sufficient evidence to create a genuine issue of material fact on his federal cause of action. Thus, it is recommended that summary judgment be granted on that claim. If the district judge accepts this Report and Recommendation, then the original federal jurisdiction claims will be dismissed. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims

when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, to the extent Plaintiff has raised any state law claims, the undersigned recommends that the district judge decline to retain jurisdiction over those claims.

## V. CONCLUSION

For the reasons discussed above, it is recommended that Plaintiff's Motions for Preliminary Injunction (Documents # 158, 175, 182) be denied, Defendant's Motion for Summary Judgment (Document # 189) be granted as to Plaintiff's § 1983 claim, the court decline to exercise supplemental jurisdiction over any state law claims, and this case be dismissed in its entirety. If the district judge accepts this recommendation, all other pending motions will be moot.

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 20, 2012
Florence, South Carolina

**The parties are directed to the important notice on the following page.**